Ronald L. HUBER; William J. Airgood; Anthony Defabbo; John Dinio; Ernest Gishnock; John Bidlenscik; Hilma Mullins; William Deem, individually and on behalf of those similarly situated, Appellants

v.

Robert G. TAYLOR, II; Robert G. Taylor II, P.C.; R.G. Taylor, II, P.C.; Cletus P. Ernster, III; Taylor & Ernster PC; Christopher Fitzgerald; Estate

---

of Robert A. Pritchard; Pritchard Law Firm, PLLC; Joseph B. Cox, Jr.; Joseph B. Cox, Jr., Ltd.; Cox and Cox LLP; Taylor, Davis & Ernster, P.C.*

No. 07–2473.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit L.A.R. 34.1(a) May 21, 2008.

Filed: July 11, 2008.

* (Amended pursuant to the Order of the Clerk dated 10/17/07).

Esther S. Trakinski, New York, NY, for Appellants.

Alisa N. Carr, Leech Tishman Fuscaldo & Lampl, LLC, Pittsburgh, PA, for Appellants.

Howard M. Klein, Judson A. Aaron, Jeannette M. Brian, Conrad O'Brien Gellman & Rohn, P.C., Philadelphia, PA, for Appellees Robert G. Taylor, II; Robert G. Taylor, II, P.C.; and R.G. Taylor, II, P.C.

Kevin L. Colosimo, Andrew G. Jenkins, Thorp Reed & Armstrong, LLP, Pittsburgh, PA, for Appellees Estate of Robert A. Pritchard; and Pritchard Law Firm, PLLC.

Thomas C. DeLorenzo, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, PA, for Joseph B. Cox, Jr.; and Joseph B. Cox, Jr., Ltd.

Anita B. Weinstein, Cozen & O'Connor, Philadelphia, PA, for Cox and Cox LLP.

Before: SMITH, and NYGAARD, Circuit Judges, and STAFFORD, District Judge.[**]

## OPINION

STAFFORD, District Judge.

Once again, this case is before us on appeal. Once again, we must send the case back to the District Court. Having set out the facts in some detail in our previous opinion, *Huber v. Taylor*, 469 F.3d 67, 69–73 (3d Cir.2006), we now recount only those facts essential to our decision here.

[**] The Honorable William H. Stafford, Jr., Senior United States District Judge for the Northern District of Florida, sitting by designation.

1. Since this action was filed, the Estate of Robert A. Pritchard has been substituted for Robert A. Pritchard.

## I. BACKGROUND

Alleging diversity of citizenship, the appellants, Ronald L. Huber, William J. Airgood, Anthony DeFabbo, John Dinio, Ernest Gishnock, John Bidlencsik, Hilma Mullins, and William Deem (collectively, "Plaintiffs"), filed this federal lawsuit in 2002 against several lawyers—Robert G. Taylor, II, Cletus P. Ernster III, Robert A. Pritchard,[1] Christopher Fitzgerald, and Joseph B. Cox, Jr.—and their respective law firms (collectively, "Defendants"). Plaintiffs, all of whom have asbestosis, were previously represented by Defendants in asbestos personal injury actions in Mississippi state court. Asserting multiple claims on behalf of themselves and a putative class of asbestosis victims,[2] Plaintiffs alleged that Defendants failed to disclose both the material terms of settlement offers as well as the fee-sharing arrangements among co-counsel during the course of the Mississippi litigation. They also alleged, among other things, that Defendants (1) distributed less of the settlement funds—totaling hundreds of millions of dollars—to them than to other similarly situated clients, all to the benefit of Defendants; and (2) charged expenses that were inflated, inappropriate, and, in some instances, fictitious. Plaintiffs asked for compensatory damages, disgorgement of attorneys' fees, as well as punitive damages.

Following limited discovery and the filing of two amended complaints, the District Court entered orders denying Plaintiffs' request for class certification and

2. Plaintiffs asserted, *inter alia*, claims for breach of fiduciary duty, fraud, conversion, conspiracy to convert and defraud, professional malpractice, and violation of the Pennsylvania Deceptive Trade Practices and Consumer Protection Law.

granting Defendants' motion for summary judgment. The District Court found that Plaintiffs failed to show actual harm, namely, that Plaintiffs would have achieved a better outcome in the Mississippi litigation but for Defendants' conduct. Concluding that actual harm was a required element of all of Plaintiffs' claims, the District Court granted summary judgment to Defendants. Plaintiffs appealed the denial of class certification and the grant of summary judgment with respect to their breach of fiduciary duty claims. Plaintiffs did not appeal the grant of summary judgment with respect to their claims of fraud, conspiracy to defraud and convert, legal malpractice, conversion, and violation of deceptive trade practices laws.

On appeal, this Court vacated the District Court's denial of class certification as well as its grant of summary judgment to Defendants on Plaintiffs' breach of fiduciary duty claims. *Huber*, 469 F.3d at 83. The majority determined that the District Court failed to apply the appropriate law, namely Texas law, which does not require a showing of actual injury in order to maintain a claim for breach of fiduciary duty when the remedy sought is disgorgement of attorneys' fees. The Court accordingly remanded the case for adjudication of Plaintiffs' breach of fiduciary duty claims in light of Texas law.

On remand, Plaintiffs sought leave to file a proposed third amended complaint, asserting breach of fiduciary duty claims under Texas law and again seeking certification of a class. The District Court denied Plaintiffs' motion for leave to file their third amended complaint, then dismissed Plaintiffs' six-year-old claims for want of jurisdiction. Specifically, the District Court was persuaded that no single plain-

tiff could satisfy the statutory minimum amount in controversy. The District Court also decided—*sua sponte*—that Plaintiffs' local counsel ("Local Counsel") were necessary and indispensable parties who had not been named in Plaintiffs' complaint. Plaintiffs now appeal the District Court's order of dismissal.[3]

 We exercise plenary review over the District Court's dismissal for lack of subject matter jurisdiction. *Golden ex rel. Golden v. Golden,* 382 F.3d 348 (3d Cir. 2004).

## II. *AMOUNT IN CONTROVERSY*

 In *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938), the Supreme Court long ago established the standard for deciding whether the required amount in controversy has been adequately alleged.

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that . . . the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.

*Id.* at 288–89, 58 S.Ct. 586 (footnotes omitted). Typically, the inability of a plaintiff to ultimately recover an amount adequate to give the court jurisdiction does not show bad faith, nor does it oust the court's subject matter jurisdiction. *Id.* at 289, 58 S.Ct. 586. Such inability is a "subsequent event" that, while reducing the amount in controversy below the statutory minimum, does not require dismissal. *See Rosado v. Wyman,* 397 U.S. 397, 405 n. 6, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970) (noting "the

---

**3.** The District Court exercised jurisdiction pursuant to 28 U.S.C. § 1332(a). Appellate jurisdiction exists under 28 U.S.C. § 1291.

well-settled rule that a federal court does not lose jurisdiction over a diversity action which was well founded at the outset even though ... the amount recovered falls short of [the statutory minimum]").

In contrast, there may be "subsequent revelations" that, in fact, the required statutory amount was not in controversy at the commencement of the action. The Supreme Court has endorsed the practice of dismissing a case on the basis of post-filing *revelations* regarding the invalidity of claims at the time of filing:

> In a cause instituted in the federal court the plaintiff chooses his forum. He knows or should know whether his claim is within the statutory requirement as to amount. His good faith in choosing the federal forum is open to challenge not only by resort to the face of his complaint, but by the facts disclosed at trial, and if from either source it is clear that his claim never could have amounted to the sum necessary to give jurisdiction there is no injustice in dismissing the suit.

*St. Paul Mercury*, 303 U.S. at 290, 58 S.Ct. 586. Dismissal is warranted, however, only when a subsequent revelation clearly establishes that the plaintiff's claims never could have amounted to the sum necessary to support diversity jurisdiction. *See Jones v. Knox Exploration Corp.*, 2 F.3d 181, 183 (6th Cir.1993) (noting that "[a] distinction must be made ... between subsequent events that change the amount in controversy and subsequent revelations that, in fact, the required amount was or was not in controversy at the commencement of the action").

Claims may not be aggregated among multiple plaintiffs to reach the required amount in controversy. Rather, each plaintiff's claim must stand on its own. *Golden*, 382 F.3d at 355. For each plaintiff, claims for punitive damages may be aggregated with claims for compensatory damages, *provided* the claims for punitive damages are not "patently frivolous and without foundation." *Id.* (internal quotation marks and citations omitted). Claims for punitive damages are "patently frivolous and without foundation" when, for example, they are not permitted under state substantive law. *Id.* If appropriately made, however, claims for punitive damages *"will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of the plaintiff's claim is below the statutory minimum."* *Id.* (emphasis added).

Texas courts have permitted recovery of punitive damages based on a defendant's breach of a fiduciary duty and/or fraud. *See, e.g., Brosseau v. Ranzau*, 81 S.W.3d 381, 396–97 (Tex.App.2002) (upholding an award of punitive damages in a breach-of-fiduciary-duty case, explaining that "a defendant's intentional breach of fiduciary duty is a tort for which a plaintiff may recover punitive damages"); *Henry v. Thompson*, No. 01–01–01211–CV, 2003 WL 1091766, *2 (Tex.App. Mar. 13, 2003) (noting that, under Texas law, parties may recover punitive damages for fraud). While punitive damages must be reasonably proportioned to actual damages, no set rule or ratio exists to help in determining whether the amount of an award is reasonable. *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex.1981); *see also Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 315 (Tex.2006) (J. Johnson, concurring) (noting that *"there are no rigid benchmarks that a punitive damages award may not surpass "* but explaining, at the same time, that "few awards *exceeding* a single-digit ratio between punitive and compensatory damages ... will satisfy due process") (emphasis in original). The amount of punitive damages rests largely in the discretion of the jury. *Lesikar v.*

*Rappeport*, 33 S.W.3d 282, 315 (Tex.App. 2000).

 Typically, Texas law does not permit punitive damages in cases where the plaintiff has suffered no actual harm. *See Twin City Fire Ins. Co. v. Davis*, 904 S.W.2d 663 (Tex.1995) (explaining that "actual damages sustained from a tort must be proven before punitive damages are available"). Texas courts do, however, allow punitive damages incident to equitable relief where no actual damages have been awarded and where the equitable relief involves the return of property. *See Nabours v. Longview Sav. & Loan Ass'n*, 700 S.W.2d 901, 904 n. 3 (Tex.1985) (citing cases). The parties have not cited, nor has this court found, any Texas case holding that relief in the form of disgorgement of fees may *not* support an award of punitive damages. Indeed, Texas caselaw suggests that the opposite may be true. *See, e.g., Russell v. Truitt*, 554 S.W.2d 948 (Tex.Civ. App.1977) (upholding an award of punitive damages based upon the forfeiture of agency fees in an action for breach of the agent's fiduciary duties).[4]

 Here, in their initial complaint, Plaintiffs alleged that "the amount in controversy with respect to each class member exceeds the sum or value of $75,000." They asserted claims for breach of fiduciary duty, fraud, conspiracy to defraud and convert, professional malpractice, conversion, and violation of deceptive trade prac-

tices. Among other things, they alleged that, under the terms of the settlements negotiated by Defendants in the underlying state court asbestos litigation, Northerners (including Plaintiffs) received payments that were between 2.5 and 18 times lower than those received by Southerners. This court addressed this allegation in its first *Huber* decision as follows:

> Defendants, in settling these cases for Southerners, did not have to share their fees with Local Counsel, as they had to do with Northerners. Plaintiffs allege that the difference in the settlements to Northerners is attributable to this incentive of Defendants to allocate a greater percentage of aggregate settlements to Southerners in order to minimize Local Counsel's percentages. This marginal percentage difference becomes significant in light of the scale of the settlements. The record contains the approximate or maximum values of eleven of the nineteen settlement agreements negotiated by Defendants. We calculate these eleven settlement agreements to total some $400 million. Therefore, on just this portion of the total settlements, Defendants stood to gain up to $10 million (2.5% pf $400 million) at the expense of Northerners (and Local Counsel), depending on how the settlements were allocated between Northerners and Southerners.

*Huber*, 469 F.3d at 70–71. In their request for relief, Plaintiffs asked for com-

---

**4.** Defendants suggest that *Truitt* is an anomaly in the canon of Texas law. According to Defendants, the "return of property" exception requires economic loss, separate and apart from the return of property. We are unconvinced. In *Nabours*, the Texas Supreme Court stressed that "where punitive damages have been allowed incident to equitable relief, the equitable relief has involved the *return of property* to the injured party." *Nabours*, 700 S.W.2d at 905 n. 3. The supreme court then listed the *Truitt* case as an

example of a case where the return of agency fees supported an award of punitive damages for the agency's breach of fiduciary duty. The supreme court did not suggest that a return of property must be accompanied by some other "economic loss or injury." *See also Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 584 (Tex.1963) (upholding an award of punitive damages based on the return of profits gained by the defendants in breach of their duties as fiduciaries).

pensatory damages in excess of $150,000, punitive damages in excess of $500,000, and disgorgement of attorneys' fees paid to Defendants. A jury trial was demanded. At the time Plaintiffs filed their complaint in federal court, neither Defendants nor the District Court questioned Plaintiffs' allegations regarding the amount in controversy.

Not until more than five years after the case was originally filed did the District Court determine that Plaintiffs' case should be dismissed for failure to satisfy the jurisdictional amount in controversy. At that time, the District Court evaluated the case in its then-current posture, noting that Plaintiffs had failed to present evidence of actual damages, that Plaintiffs' breach of fiduciary duty claims were the only claims that remained viable, and that relief was limited to disgorgement of fees, compensatory damages that were likely to be *de minimis,* and punitive damages. The District Court found that the most any single plaintiff could allegedly recover in non-punitive damages was $13,000, representing the amount of fees subject to disgorgement. Given that finding, the District Court explained that "[u]nless plaintiffs can establish to a legal certainty that punitive damages for that 'highest fees' class member will exceed approximately $62,000, plaintiffs cannot demonstrate that this case meets the threshold amount in controversy." The District Court dismissed the case, concluding that it would be "fanciful" to suppose that a plaintiff who paid $13,000 in fees could recover more than $62,000 in punitive damages.

We are unpersuaded that Plaintiffs' original complaint was so patently deficient as to reflect to a legal certainty that no Plaintiff could recover the jurisdictional amount ($75,000) alleged. Nothing in this record suggests that the damages alleged were feigned to satisfy the jurisdictional minimum or that Plaintiffs had no good faith basis for their claims, including not only their breach of fiduciary duty claims but also their claims of fraud, conversion, conspiracy to convert and defraud, professional malpractice, and violation of the Pennsylvania Deceptive Trade Practices and Consumer Protection Law.

 We are further unpersuaded that there were subsequent *revelations* requiring dismissal. To be sure, Plaintiffs ultimately failed to prevail on their claims of fraud, conversion, conspiracy to convert and defraud, professional malpractice, and violation of the Pennsylvania Deceptive Trade Practices and Consumer Protection Law. They also failed to establish actual harm.[5] These failures, however, are in the nature of subsequent events that do *not* oust the court of subject matter jurisdiction.

Defendants' arguments to the contrary are unavailing. In particular, we find Defendants' reliance on Chapter 41 of the Texas Civil Practice and Remedies Code misplaced. When this action was filed in 2002, section 41.003(a) provided, in pertinent part, that punitive or exemplary damages were permissible if the claimant proved, by clear and convincing evidence, that the harm with respect to which the recovery of exemplary damages was

---

**5.** Defendants argue, correctly, that Plaintiffs will not be free to re-litigate the issue of actual harm on a second remand. In our prior opinion, *Huber,* 469 F.3d at 73, we stated: "[I]f Plaintiffs must show causation and actual injury, they lose on both parts of their appeal." Our implicit affirmance of the district court's no-actual-harm finding is law of the case. Although we vacated the district court's entry of summary judgment on that first appeal, remand was limited to Plaintiffs' breach of fiduciary duty claims, claims that did not require a showing of actual harm.

sought resulted from fraud or malice. Tex. Civ. Prac. & Rem.Code § 41.003(a) (2002).[6] In 2002 and earlier, "malice" was defined in Chapter 41 as "a specific intent by the defendant to cause substantial injury to the claimant." *Id.* at § 41.001(7)(A). Defendants maintain that "[a] review of the record establishes that defendants' conduct cannot be characterized as fraudulent, malicious, or grossly negligent." Defendants make the mistake, however, of looking at the record as it currently exists. At the time of filing, Plaintiffs asserted, among other things, claims of both fraud and breach of fiduciary duty, and they alleged that Defendants' acts and omissions were intentional, causing injury to Plaintiffs while resulting in gain to Defendants. While *subsequent events* have established that Plaintiffs cannot prevail on their claims of fraud, we have found that those subsequent events did not destroy the court's diversity jurisdiction.[7]

In sum, we find no basis for finding that the legal impossibility of recovery is so certain as to negate Plaintiffs' commencement-of-the-action allegations regarding the amount in controversy. Accordingly, we will reverse the District Court's order dismissing the case for lack of subject matter jurisdiction.

## III. *RULE 19*

Rule 19(a) defines parties who must be joined if joinder is "feasible." If a court decides that a party should be joined under Rule 19(a) but joinder is not feasible because it would destroy the court's diversity jurisdiction, then the court must determine whether the absent party is "indispensable" under Rule 19(b). If the party is indispensable, the action must be dismissed.

 To the extent a district court's Rule 19(a) determination is premised on a conclusion of law, this court's review is plenary. Findings of fact are reviewed for clear error. This court reviews for abuse of discretion a district court's Rule 19(b) determination that a party is indispensable and that dismissal is required because the party's joinder would destroy subject matter jurisdiction. *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.,* 11 F.3d 399, 403 (3d Cir.1993). In a diversity case such as this one, the question of whether a party is necessary or indispensable is a question of federal law. *See Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 124 n. 22, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968) (explaining that, in a diversity case, determination of whether a party is necessary or indispensable is a question of federal law, but determined by reference to interests of the parties under state law).

When the District Court rendered the decision that is now before this Court, Rule 19(a) provided as follows:

---

**6.** In 2003, section 41.001(3) was amended to include "gross negligence" as a separate basis for exemplary damages, and section 41.001(7) was amended to include a separate definition of "gross negligence." Previously, section 41.001(7) included the definition of "gross negligence" as an alternate definition of the word "malice."

**7.** We note, moreover, that at least one Texas court has stated that "malice is not a required element of exemplary damages where there is an intentional breach of fiduciary duty."

*Hawthorne v. Guenther,* 917 S.W.2d 924, 936 (Tex.App.1996). As explained by a number of Texas appellate courts, the question concerning exemplary damages for breach of fiduciary duty is not whether the defendant had an intent to injure but rather whether the defendant intended to gain an additional benefit for himself. *See, e.g., Edwards v. Holleman,* 893 S.W.2d 115, 120 (Tex.App.1995); *Cheek v. Humphreys,* 800 S.W.2d 596, 599 (Tex.App. 1990).

A person ... shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed.R.Civ.P.19(a) (2006).[8] Under Rule 19(a)(1), the Court must consider whether—in the absence of an un-joined party—complete relief can be granted to the persons already parties to the lawsuit. The effect that a decision may have on an absent party is immaterial. In contrast, under Rule 19(a)(2)(i), the Court must consider the effect, if any, that resolution of the dispute among the named parties will have on an absent party.

Here, Defendants argued before the District Court that Local Counsel were non-parties whose presence in the lawsuit was necessary under Rule 19(a)(1). The District Court rejected that argument, finding that complete relief was available to the named parties in the absence of Local Counsel. Although Defendants did not argue that Local Counsel were "necessary" parties under Rule 19(a)(2)(i), the District Court nonetheless went on to con-

sider the applicability of that subsection, stating:

Although defendants only assert Rule 19(a)(1) grounds for finding Local Counsel to be necessary parties, and plaintiffs only respond to that argument, it is appropriate and, indeed, imperative that this Court examine the other facets of disjunctive Rule 19(a) to determine whether Local Counsel are necessary parties whose joinder would destroy diversity jurisdiction, since, after all, it is the continuing obligation of the federal courts to ensure that jurisdiction exists at all times.

Pursuant to subsection 19(a)(2)(i), the District Court determined that Local Counsel were necessary parties because "trial in their absence would, as a practical matter, impair and impede their ability to protect their financial and professional interests." Having found that Local Counsel should be joined under Rule 19(a), the District Court then turned to Rule 19(b), which provides that "[i]f a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Without providing notice to the parties or giving Plaintiffs an opportunity to be heard, the District Court invoked Rule 19(b), dismissing the case without prejudice to Plaintiffs' filing suit in other jurisdictions.

Among other things, Plaintiffs challenge the District Court's dismissal on procedur-

---

**8.** Rule 19 was amended in 2007 to provide: A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
(A) in that person's absence, the court cannot accord complete relief among existing parties; or
(B) that person claims an interest relating to the subject of the action and is so situat-

ed that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest. Fed.R.Civ.P. 19(a)(1) (2007).

al grounds. Plaintiffs contend that they should have been given notice and an opportunity to respond before the District Court dismissed their action under Rule 19(b).

 In deciding that it could *sua sponte* dismiss the case based on a section of Rule 19 that was neither raised by Defendants nor addressed by Plaintiffs, the District Court relied on cases espousing the well-established rule that a court may, indeed must, *sua sponte* raise matters affecting the court's subject matter jurisdiction. None of the cases upon which the District Court relied, however, suggests that it is proper for a district court to dismiss without first giving the parties an opportunity to address the court's concerns. Indeed, we now hold that the District Court should not dismiss a complaint without first giving the plaintiff an opportunity to respond.

Although Plaintiffs argue correctly that the District Court should have permitted them to address Rule 19(a)(2) before invoking the rule as a basis for dismissal, we will not return the case to the District Court on that basis. The parties have now addressed the Rule 19(a)(2) issue in their briefs on appeal, and we can decide the issue as a matter of law.

As an initial matter, Rule 19(a)(2)(i) requires that the absent parties have "an *interest* relating to the subject of the action." Here, in finding that Local Counsel were necessary parties under subsection 19(a)(2)(i), the District Court wrote:

There is no doubt that Local Counsel are necessary parties under subsection (a)(2)(i). Local Counsel have concrete, tangible interests, and intangible but profoundly significant professional interests, relating to the subject matter of the pending action, and trial in their absence would, as a practical matter, impair and impede their ability to protect their financial and professional interests. This is because they are in privity with Lead Counsel in the performance of their jointly owed fiduciary duties to their mutual clients, so that judgment entered against Lead Counsel could preclude Local Counsel from defending against any future claims for liability for breach of fiduciary duty, and from disputing any determination regarding their joint failure to disclose critical information to their clients in any disciplinary proceedings plaintiffs might initiate with the Disciplinary Boards of Pennsylvania, Indiana or Ohio.

We are not persuaded by the District Court's analysis.

 That Defendants and Local Counsel may have "jointly owed fiduciary duties to their mutual clients" does not mean that they shared an "interest relating to the subject of the action" for purposes of Rule 19(a) analysis.[9] Indeed, an Advisory Committee Note to Rule 19(a) explicitly states that subdivision (a) of the rule "is not at variance with the settled authorities holding that a tortfeasor with the usual 'joint-and-several' liability is merely a permissive

---

9. In finding the requirements of Rule 19(a) satisfied, the District Court stressed that (1) "Local Counsel are no doubt joint tortfeasors in the alleged breach of fiduciary duty based upon non-disclosure of critical information about the fee arrangements;" and (2) "Local Counsel are not 'garden variety' joint tortfeasors" but, on the contrary, are "in privity with defendants/Lead Counsel, and they equally share the co-counsel responsibilities and fiduciary duties of absolute loyalty and full disclosure of any conflicts and meaningful information to their clients." To the extent, if any, that the District Court relied on the joint tortfeasor status of Defendants and Local Counsel to find that Local Counsel were "necessary" parties, its reliance was misplaced.

party to an action against another with like liability." Courts, moreover, have long recognized that "it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." *Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 7, 111 S.Ct. 315, 112 L.Ed.2d 263 (1990) (per curiam); *see also PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 204 (6th Cir.2001) (noting that "a person's status as a joint tortfeasor does not make that person a necessary party, much less an indispensable party").

Furthermore, the requirements of Rule 19(a) are not satisfied simply because a judgment against Defendants in this action might set a persuasive precedent in any potential future action against Local Counsel. *See Janney Montgomery Scott, Inc.*, 11 F.3d at 411 (rejecting the district court's conclusion that the possibility of a "persuasive precedent" required joinder under Rule 19(a)(2)(i)). In *Janney*, the defendant and its parent corporation were co-obligors on a contract with the plaintiff. Alleging a breach of contract, the plaintiff filed suit in federal court against the defendant. The plaintiff also filed suit in state court against both the defendant and its parent corporation. The federal district court granted the defendant's motion for judgment on the pleadings, in part based on its conclusion that the defendant's parent corporation was a "necessary" party to the suit under Rule 19(a)(2)(i) because "it was likely that any decision reached in the federal action would affect the pending state court action . . . as persuasive precedent against [the absent parent corporation]." *Id.* at 406 (internal quotations and citation omitted). This court reversed the district court's decision, stating:

> We are not sure what the district court means by the phrase 'persuasive precedent.' To the extent it involves the doctrine of *stare decisis*, we are not inclined

to hold that any potential effect the doctrine may have on an absent party's rights makes the absent party's joinder compulsory under Rule 19(a) whenever 'feasible.' Such a holding would greatly expand the class of 'necessary' or compulsory parties Rule 19(a) creates.

*Id.* at 407.

■■■■ As recognized in *Janney*, issue preclusion generally applies only to "persons who were either parties to [a] prior action or shared the same interest as the parties who were present in the prior action." *Id.* at 410. Here, in finding that the doctrine of issue preclusion required the presence of Local Counsel in the suit against Defendants, the District Court relied on the notion that Local Counsel were "in privity with Lead Counsel in the performance of their jointly owed fiduciary duties to their mutual clients." For issue preclusion purposes, however, the matter of privity typically arises in a *subsequent* lawsuit. Indeed, the *Janney* court noted that, given the highly factual nature of a privity analysis, courts engaging in Rule 19 analysis should not 'theorize' as to whether an absent party is in privity with a party to an action because such an analysis would be premature. *Id.*; *see also Schulman v. J.P. Morgan Inv. Mgmt., Inc.*, 35 F.3d 799, 805 (3d Cir.1994) (explaining that whether collateral estoppel exists "is ultimately a matter for the . . . court [in a subsequent litigation] to decide when the issue arises"); *Johnson & Johnson v. Coopervision, Inc.*, 720 F.Supp. 1116, 1124 (D.Del.1989) (explaining that "[i]t would be premature for this Court to endeavor to decide whether [the absent party is] in privity in bringing the instant action, for purposes of determining the preclusive effect of this action on a later lawsuit, where the potential later lawsuit is yet to be brought, and where the instant action has not even run its course yet").

■ Privity, moreover, applies for issue preclusion purposes only when a nonparty controls or directs the previous litigation or when a party is sued in its capacity as a representative of the nonparty. *Janney,* 11 F.3d at 410; *see also Collins v. E.I. DuPont de Nemours & Co.,* 34 F.3d 172, 176 (3d Cir.1994) (explaining that a relationship is considered to be sufficiently close for issue preclusion purposes "only when the party is a virtual representative of the non-party, or when the non-party actually controls the litigation"). The record in this case supports neither basis for a finding of privity.

■ Not only do we find the District Court's reliance on Local Counsel's joint-tortfeasor status and purported privity flawed, we also find the District Court's concern about issue preclusion too speculative to require joinder of Local Counsel. As stressed in *Janney,* where the preclusive effect of an action on any related litigation is speculative, joinder of an absent party is not compulsory under Rule 19(a)(2)(i). *Janney,* 11 F.3d at 409. Here, the District Court concluded that Local Counsel have an "interest relating to the subject of the action" under Rule 19(a)(2)(i), reasoning that the outcome of this lawsuit might in some unspecified way have a preclusive effect with respect to some issue material to Local Counsel's rights in some future lawsuit that may or may not be filed. That issue preclusion is possible, however, is not enough to trigger a Rule 19(a)(2)(i) finding.

Plaintiffs in this case have sued Defendants for breach of *Defendants'* fiduciary duties, and they seek, among other things, disgorgement of fees received by *Defendants.* Contrary to the decision of the District Court, we find no basis for treating Local Counsel as "necessary" parties who must be joined if joinder is feasible under Rule 19(a)(2)(i). Absent a basis for

triggering subdivision 19(a)(2)(i), the District Court's decision to dismiss the case under Rule 19(b) cannot be upheld. Accordingly, we will reverse the District Court's order dismissing the case under Rule 19(b).

## IV. *REASSIGNMENT ON REMAND*

■ Plaintiffs have requested that this case be assigned to a different judge on remand. In *United States v. Wecht,* 484 F.3d 194 (3d Cir.2007), this court wrote:

> The decision to remove a judge from an ongoing trial should be considered seriously and made only rarely. This Court may order the recusal of a judge pursuant to 28 U.S.C. § 455(a) for the appearance of partiality or reassign the case to a new judge under its supervisory powers. *See* 28 U.S.C. § 455(a) ("Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."); *Liteky v. United States,* 510 U.S. 540, 554, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) ("Federal appellate courts' ability to assign a case to a different judge on remand rests not on the recusal statutes alone, but on the appellate courts' statutory power to 'require such further proceedings to be had as may be just under the circumstances,' 28 U.S.C. § 2106.").

*Id.* at 226. Confident that the district judge will properly discharge his judicial responsibilities upon remand, we find no basis for reassignment at this time.

## V. *CONCLUSION*

For the reasons stated above, we will reverse the judgment of dismissal entered by the District Court and will remand for

further proceedings consistent with this opinion.